**EMPLOYERS CASUALTY COMPANY,**
**Appellant,**

**v.**

**Mario MIRELES et al., Appellees.**

**No. 15366.**

Court of Civil Appeals of Texas,
San Antonio.

Feb. 12, 1975.

Rehearing Denied March 19, 1975.

Robert A. Allen, Dayton G. Wiley, Wiley, Plunkett, Gibson & Allen, San Antonio, for appellant.

Coffee, Goldston & Bradshaw, Austin, for appellees.

BARROW, Chief Justice.

Appellant filed suit seeking a declaratory judgment that it was not obligated to defend Mario Mireles in a suit brought by Joyce N. Dannar, et al., to recover damages sustained in an automobile collision. Appellant had issued an automobile liability insurance policy to Mireles through the Texas Auto Insurance Plan (formerly known as Texas Assigned Risk Plan), but urged that the policy had been breached by Mireles' failure to report the accident as soon as practicable and to immediately forward the suit papers to appellant. Joyce N. Dannar, et al., intervened in the suit and sought a declaration that appellant was obligated to defend the suit and also to pay any sums adjudged against Mireles in the suit. The case was tried before a jury, but at the conclusion of the evidence, the trial court instructed a verdict for Mireles and intervenors. Judgment was

entered declaring that appellant was obligated to defend Mireles in the suit filed by intervenors. All other relief was denied.[1] Appellant timely perfected its appeal which has been replied to only by intervenors.

Since this is an appeal from the granting of an instructed verdict, we must accept as true the evidence supporting appellant's position in this controversy. All conflicts and inconsistencies in the evidence must be resolved in its favor and we must draw all inferences therefrom most favorable to appellant. Constant v. Howe, 436 S.W.2d 115 (Tex.1968).

About March 30, 1972, Mireles attempted to purchase an automobile liability policy through Allstate Insurance Company. The Allstate agent advised him that he had too many traffic violations on his record for Allstate to issue a policy and referred him to the Rodriguez General Insurance Agency in San Antonio. Julian Rodriguez, owner of the agency, helped Mireles fill out an application for a policy through the Texas Automobile Insurance Plan and mailed the application to the Plan office in Austin, together with the annual premium of $173.-70. Mr. Rodriguez did issue a policy providing collision and comprehensive coverage to Mireles through one of the companies represented by the Rodriguez Agency. The manager of the Plan assigned the Mireles risk to appellant on April 4, 1972. The policy had been financed for Mireles through the Houston Premium Finance Corporation, and on April 10, 1972, appellant sent the original policy effective April 5, 1972, to April 5, 1973, to the Houston Premium Finance Corporation. A cover letter advised that all accidents should be reported to appellant's district office at 100 Tower Life Bldg., San Antonio. A copy of this letter was sent to both Mireles and the Rodriguez agency.

Mireles was involved in a serious automobile collision on May 21, 1972, when his pick-up truck collided with a vehicle occupied by intervenors. Mireles testified that he reported the accident the next day by a long distance telephone call to the receptionist at the Rodriguez Agency. Two days later, he went to the agency and signed a written report of the accident which was prepared by the receptionist. The subsequent facts are rather inconclusive in that the Rodriguez Agency was closed in the fall of 1972 and neither Rodriguez, his wife, nor the two former employees who testified, had any direct recollection of the Mireles claim and none of the agency records were available. Furthermore, Mireles had made a claim under his collision policy for the damage to his vehicle, and this claim was paid after about a two-month delay. There is no direct evidence that appellant had any notice of the accident or intervenors' suit until they received a copy of the citation and petition around December 4, 1972.

It is settled law that the provision of the policy requiring that notice of an accident be given the insurer "as soon as practicable" is a condition precedent to liability. In the absence of waiver or other special circumstances, failure to perform the condition constitutes an absolute defense to liability on the policy.[2] Dairyland County Mutual Ins. Co. of Texas v. Roman, 498 S.W.2d 154 (Tex.1973); Members Mutual Insurance Company v. Cutaia, 476 S.W.2d 278 (Tex.1972). It is not questioned here that if notice was required and not given until after December 4, 1972, Mireles did not comply with the notice provision in his policy.

Intervenors urge, however, that the case should be affirmed because appellant's liability on its policy issued under the as-

---

1. Intervenors concede that it was not entitled to a declaration regarding payment by appellant of a future judgment. Firemen's Ins. Co. of Newark, New Jersey v. Burch, 442 S.W.2d 331 (Tex.1968).

2. This policy was written before the change was made to require prejudice.

signed risk plan is absolute, under Section 21(f) of the Safety Responsibility Act, Article 6701h, Vernon's Tex.Rev.Civ.Stat.Ann. (1969). This section provides in part that the liability of the insurance company shall become absolute whenever injury covered by said motor vehicle liability policy occurs and that no violation of the policy shall defeat or void it. It is seen, however, that a "motor vehicle liability policy" as used in Section 21(f) is defined in Section 21(a) as one *certified* as provided in Section 19 or Section 20 as proof of financial responsibility. By the terms of the Safety Responsibility Act one comes under the authority of the Act, and thus, is required to give proof of financial responsibility by virtue of having either an automobile accident or a conviction for driving while intoxicated. One of the statutory means of furnishing proof of financial responsibility is by filing a certificate of insurance. This is accomplished by the insurer filing with the Department of Public Safety a form SR–22.

■ It is only after a form SR–22 is filed that the automobile liability policy becomes *certified* and is a "motor vehicle liability policy" within the definition set forth in Section 21(a). Western Alliance Insurance Company v. Albarez, 380 S.W.2d 710 (Tex.Civ.App.—Austin 1964, writ ref'd n. r. e.); National Surety Corp. v. Diggs, 272 S.W.2d 604 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.); McCarthy v. Insurance Company of Texas, 271 S.W.2d 836 (Tex.Civ.App.—San Antonio 1954, no writ); United States Casualty Company v. Brock, 345 S.W.2d 461 (Tex.Civ.App.—Amarillo 1961, writ ref'd). Cf. Lumbermens Mutual Insurance Company v. Grayson, 422 S.W.2d 755 (Tex.Civ.App.—Waco 1967, writ ref'd n. r. e.).

On the other hand, a person is eligible for an automobile liability policy under the assigned risk plan if he is a, high risk driver even though he has not been required by the Safety Responsibility Act to furnish proof of financial responsibility. For example, certain classes of drivers such as teen-age drivers, elderly drivers, or other drivers regarded as bad risks by insurance companies would have difficulty in securing a policy other than through the assigned risk plan. The only requirements for a high risk driver to secure a policy through the assigned risk plan are that he possesses a valid driver's license and has been unable to procure a regular policy. Texas Automobile Insurance Plan, Section 9. There is no statute or regulation of the Plan which requires such an assigned risk policy to be *certified* or that makes liability under such policy absolute.

Intervenors cite Kahla v. Travelers Insurance Company, 482 S.W.2d 928 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.) in support of their contention that a policy issued under the Texas Assigned Risk Plan is absolute under Section 21(f). The opinion does not state whether Kahla's policy was *certified* or not, but assumes, without consideration of the point, that the policy is within the definition set forth in Section 21(a). Since none of the foregoing authorities were distinguished, we must assume, as the Court obviously did, that the Kahla policy was *certified*. In any event, there was no affirmative pleading by Travelers of a policy breach as required by Rule 94, Texas Rules of Civil Procedure (1967). Dairyland County Mutual Ins. Co. of Texas v. Roman, *supra*. We therefore do not consider that this case is authority for the proposition that a policy which was not *certified* as required by the Safety Responsibility Act is absolute where issued under the Texas Automobile Insurance Plan.

■ The evidence is undisputed that Mireles' policy had not been certified, and was not a "motor vehicle liability policy" as defined in Section 21(a). Therefore, Section 21(f) has no application and appellant is not precluded from asserting a violation of said policy provisions.

Intervenors assert that, in any event, the case should be affirmed because Rodriguez General Insurance Agency was appellant's

agent as a matter of law. Article 21.02 of the Tex.Ins.Code Ann., V.A.T.S. (1963), provides in part:

"Any person who solicites insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, . . . shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter."

It is undisputed that Rodriguez General Insurance Agency was not a general agent of appellant; in fact, appellant had no independent agents, but wrote all its policies directly through its employees. Furthermore, the Rodriguez Agency had never written a policy for appellant. On this occasion, Rodriguez took the application from Mireles for a policy through the Texas Automobile Insurance Plan. The application, together with the premium, was forwarded to the Plan manager. The manager assigned this risk to appellant in accordance with the rules of the Plan.[3] There was no contact between appellant and Rodriguez regarding the issuance of this policy other than by appellant advising Rodriguez, as well as Mireles, of the issuance of the policy. This was required by the Plan because Mireles had designated in his application the Rodriguez Agency as servicing agent for such insurance. The Plan does not provide that the servicing agent is the agent of the insurer. Rodriguez did not solicit the application on behalf of appellant, nor could he do so under the terms of the Plan. Rodriguez did not collect the premium on behalf of appellant or perform any other act on its behalf. In this situation, Rodriguez acted as a broker on behalf of Mireles in procuring this policy through the Texas Automobile Insurance Plan.

While there is no Texas case squarely in point, a majority of the authorities and texts which have considered the question hold that in the absence of statutory authority or some special indicia of authority the assigned risk broker is the agent of the insured and not of the insurer. Hannah v. State Farm Mutual Ins. Co., 403 F.2d 375 (6th Cir. 1968); Yoshida v. Liberty Mutual Ins. Co., 240 F.2d 824 (9th Cir. 1957); Iowa National Mutual Ins. Co. v. Richards, 229 F.2d 210 (7th Cir. 1956); Bradford Inc. v. Travelers Indemnity Co., 301 A.2d 519 (Del.Super.Ct.1972); Luther v. Lumbermens Mutual Casualty Co., 60 Misc.2d 536, 303 N.Y.S. 399 (Supreme Court of Rockland County, 1968); Manufacturers Casualty Ins. Co. v. Hughes, 229 Ark. 503, 316 S.W.2d 827 (1958); Appleman, Insurance Law and Practice, Section 8732; 43 Am.Jur.2d Insurance, Section 149 (1969); 6 St. Mary's Law Journal,

---

3. All insurance companies writing private passenger automobile liability policies are required to participate in the Texas Automobile Insurance Plan. A driver applies at a local insurance agency and if unable to secure a regular policy from a private company, the agent mails the application to the Texas Automobile Insurance Plan, together with the premium. The manager of the Plan accepts the application and assigns the policy to an insurance company doing business in Texas. The policies are alternately assigned in the same percentage as the amount of voluntary business written by such company in the state. The local insurance office cannot select the company in which the policy is to be written and the application is more than likely to be assigned to a company for which the local insurance agency, be it a direct writer or general agency, does not write policies.

690. Contra: Driver v. Tennessee Farmers Mutual Ins. Co., 505 S.W.2d 476 (Tenn. 1974).

■ We conclude that there is no statutory or factual basis for holding as a matter of law that Rodriguez General Insurance Agency was the agent for appellant. To the contrary this record establishes as a matter of law that the Rodriguez Agency was the agent of Mireles. Thus, notice given Rodriguez's Agency was not notice to appellant within the terms of said policy.

■ Intervenors further urge that appellant is estopped as a matter of law from denying liability under the policy because it did not advise Mireles of the conflict of interest between Mireles and appellant. In Employers Casualty Company v. Tilley, 496 S.W.2d 552 (Tex.1973), it was held that it would be untenable under the facts and circumstances of such case to permit Employers Casualty Co. to disclaim liability for the defense of Tilley in the suit filed on the policy on account of the late notice.

There are significant differences in the facts in our case and those present in *Tilley*. Mireles was advised at the outset of the late notice problem and that the company would not proceed further without a non-waiver agreement. An answer was filed by one firm of attorneys, and this suit for declaratory judgment was filed and prosecuted by another firm. There is no suggestion of a collaboration between the two law firms. Nor is there any suggestion that the attorneys of record in the damage suit have not continued to conscientiously represent Mireles in that suit and will continue to do so unless relieved as a result of this declaratory judgment. Mireles is represented in this declaratory judgment by his own attorney. Mireles has not urged a conflict of interest or that any advantage was taken of him. Thus, we do not have the situation in *Tilley* where the same attorney represented Tilley in the personal injury suit while actively working against Tilley on the conflicting coverage question, without informing Tilley of the specific conflict and affording him the opportunity to employ his own counsel.

Appellant is not estopped as a matter of law from denying liability to Mireles under the policy according to the facts and circumstances presented in this record.

■ It has been assumed, up to this point, that appellant's first notice of the accident was when it received the citation and petition from Rodriguez Agency by letter dated December 4, 1972. There is no direct evidence to rebut the testimony of several of appellant's officers that this was its first notice. Intervenors urge, however, that this assumption is conclusively rebutted by the testimony of Mrs. Rodriguez that she saw a loss report in Mireles' file. Intervenors would have us presume from this testimony that the original of this loss report was mailed to appellant shortly after it was completed. The file was never produced, and therefore, the record is silent as to whether the loss report in Mireles' file related to the collision claim which was actually paid by another company or to this liability claim. In any event, there is no evidence whatsoever that such report, even if it relates to the liability claim, was ever mailed to appellant. The testimony of Mrs. Rodriguez does not establish a conclusive presumption that an accident report was timely mailed to appellant.

■ Finally, it is urged by intervenors that their minority excused Mireles from complying with the notice provision in this policy. Such contention is wholly without merit. We fail to see how intervenors' minority could affect the obligation of Mireles under the policy to give notice as soon as practicable. In any event, in Dairyland County Mutual Ins. Co. of Texas v. Roman, *supra*, the Supreme Court rejected a similar contention made on behalf of a minor insured.

■ The record establishes that notice of the accident of May 21, 1972, was not

given appellant until after December 4, 1972. In the absence of waiver or special circumstances not present here, this delay of over six months is not notice as soon as practicable as a matter of law. This failure constitutes an absolute defense to appellant's obligations under the policy as it existed at that time. Members Mutual Insurance Co. v. Cutaia, *supra*. It is unnecessary to consider appellant's contention that there was a delay in forwarding the suit papers to it.

The judgment of the trial court is reversed and here rendered declaring that appellant is not obligated to defend Mario Mireles in the suit for damages brought against him by intervenors Joyce Dannar, et al. The costs are taxed jointly against Mireles and intervenors.